**AMPLICON LEASING, a financial service of Amplicon, Incorporated, Plaintiff–Appellee,**

**v.**

**COACHMEN INDUSTRIES, INCORPORATED, Defendant–Appellant.**

**No. 89–1579.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 12, 1989.

Decided Aug. 21, 1990.

Edmond Foley, Kent Wilson, South Bend, Ind., for plaintiff-appellee.

T. Michael Pangburn, Elkhart, Ind., for defendant-appellant.

Before WOOD, Jr., CUDAHY and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

The appellee brought suit for breach of contract, alleging that the appellant had failed to provide the requisite advance notice of termination. A jury found for the appellee. The appellant appeals on the grounds: (1) that the district court should have directed a verdict in its favor; (2) that the district court erred by not interpreting a particular piece of written evidence as a matter of law; and (3) that the district court's announcement (an announcement it later recanted) that it thought the law was clear in appellant's favor had the effect of sandbagging the appellant's defense. We affirm the judgment of the district court.

## I. Facts

The appellant, Coachmen Industries, entered into two long-term leases of computer word processing equipment with the appellee, Amplicon Leasing. The leases provided for a base term of 60 months, with the lease automatically continuing beyond the termination date unless written notice of termination was given 120 days in advance. The notice period was apparently necessary to give Amplicon, for example, time to remarket its used equipment and to give Coachmen, for example, time to arrange for alternate word processing equipment.

As the ends of the two leases were drawing near, the parties attempted, unsuccessfully, to negotiate a new lease for upgraded word processing equipment. In January of 1986, a representative of Coachmen indicated in a telephone conversation that the company was thinking of terminating the respective lease arrangements on their termination dates. In confirmation of this telephone conversation, Amplicon sent Coachmen a January 30, 1986 letter which confirmed that Coachmen was thinking of terminating the two leases when they expired. The letter also expressed Ampli-

con's desire to keep negotiating. Appellant's Appendix, Exhibit 12.

Subsequent to this January 30, 1986 letter Coachmen sent Amplicon a letter, dated February 10, 1986, which "requested a lease transaction summary" and "enclose[d] an equipment movement schedule for all the equipment concerned." Appellant's Appendix, Exhibit 9. This letter, among other things, also asked Amplicon for a price quote on some of the leased equipment. At trial, the parties disagreed over the meaning to be ascribed to the "equipment movement schedule." Coachmen asserted that the "equipment movement schedule" evidenced a definite intent to terminate the leases. Amplicon, on the other hand, contended that it thought the "equipment movement schedule" was actually an internal document that really didn't concern it.

Coachmen paid the money due under the leases until they expired and ordered replacement equipment from IBM. Amplicon, unhappy that it had not received the required 120 days advance notice, brought a diversity suit in federal court for breach of the leases. Coachmen brought a counterclaim against Amplicon, alleging that Amplicon had breached the covenant of good faith and fair dealing by denying, in bad faith, that sufficient notice of termination had been given by Coachmen. The district court held that California law governed the dispute.

The case was tried to a jury. At the conclusion of Amplicon's case-in-chief, Coachmen made an oral motion for a directed verdict. At this time, the district court opined that it thought that, as a matter of law, Coachmen had substantially complied with the leases' advance notice provisions. A second directed verdict motion was made by Coachmen at the conclusion of all the evidence. The district court reserved decision on these motions.

In the end, the district court decided to let the question whether Coachmen had complied with the 120-day advance notice requirement go to the jury. The jury found in favor of Amplicon and against Coachmen on both Amplicon's claim and

Coachmen's counterclaim.[1] Following the entry of judgment, Coachmen filed for a judgment notwithstanding the verdict or, in the alternative, a new trial. The motion was denied. Coachmen appeals on the grounds: (1) that the district court should have directed a verdict on its behalf because the evidence was clear as a matter of law; (2) that its February 10, 1986 letter should have been interpreted by the court as a matter of law, instead of being submitted to the jury; and (3) that a new trial is required because Coachmen's attorney eased up on his defense after the district court intimated that Coachmen was going to prevail. For the reasons discussed below, we affirm the judgment of the district court.

## II. Analysis

### A. The Denial of Coachmen's Directed Verdict Motion

Coachmen's chief complaint is that the district court was required to grant a directed verdict, or at least a judgment notwithstanding the verdict, in its favor because the court, itself, believed that the evidence was clear as a matter of law.[2] We begin our analysis of the directed verdict issue by noting that in "cases in which the district court's jurisdiction rests on diversity of citizenship, state law governs the standard of review." *Pennsylvania Truck Lines, Inc. v. Solar Equity Corp.*, 882 F.2d 221, 225 (7th Cir.1989); *Crawford v. Edmonson*, 764 F.2d 479, 487 (7th Cir.), *cert. denied*, 474 U.S. 905, 106 S.Ct. 273, 88 L.Ed.2d 234 (1985); *Gonzalez v. Volvo of America Corp.*, 752 F.2d 295, 301 (7th Cir. 1985). Hence, we must look to (controlling) California law to determine if, viewing the evidence in the light most favorable to the nonmoving party, it was error for the district court to deny Coachmen's motion for a directed verdict.

■ Because we apply the substantive law of California to the facts of this case, California's directed verdict standard controls. *See Gonzalez*, 752 F.2d at 301. In California,

> a directed verdict may be granted "only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given." ... A motion for a directed verdict "is in the nature of a demurrer to the evidence, and is governed by practically the same rules, ...." In other words, the function of the trial court on a motion for a directed verdict is analogous to and practically the same as that of a reviewing court in determining, on appeal, whether there is evidence in the record of sufficient substance to support a verdict.

*Estate of Lances*, 216 Cal. 397, 400–01, 14 P.2d 768, 768–69 (1932) (citations omitted), *cited in Sancez–Corea v. Bank of America*, 38 Cal.2d 892, 215 Cal.Rptr. 679, 701 P.2d 826 (1985).

■ Applying this standard to the evidence adduced at trial, and considering it in light of California law governing the interpretation of contracts, we conclude that the district court was correct in not granting Coachmen's directed verdict or JNOV motions. As the district court ultimately concluded, the evidence was not clearly and definitively in Coachmen's favor. Rather, the evidence presented can be assessed in two ways. The first is that the requisite notice of termination was given by Coachmen by phone sometime in January of 1986 or in its February 10, 1986 letter with the attached "equipment movement schedules." The second is that Coachmen never

---

1. Coachmen has not appealed the judgment on its counterclaim.

2. Coachmen's theory does not seem to be that the district court is not entitled to change its mind after expressing a preliminary view of the evidence. Rather, Coachmen's theory seems to be that the evidence adduced at trial was clear as a matter of law, and that the district court itself as much as thought so.

directly notified Amplicon of termination (as required by the leases) because it wanted to use the threat of termination as a weapon in continuing negotiations, because it was reluctant to come out and tell Amplicon directly or because it simply assumed that indirect references were sufficient. Because of these conflicting stories, a directed verdict in Coachmen's favor would not have been appropriate. Hence, given the dictates of controlling California law, the evidence was sufficiently ambiguous and controverted as to demand resolution by the trier of fact.

**B. Interpretation of the February 10, 1986 Letter**

Coachmen contends that its February 10, 1986 letter to Amplicon should have been interpreted by the district court as a matter of law. In California, "[i]t is ... solely a judicial function to interpret written evidence unless the interpretation turns upon the credibility of extrinsic evidence." *Moss Dev. Co. v. Geary*, 41 Cal.App.3d 1, 8–9, 115 Cal.Rptr. 736 (1974) (quoting from *Parsons v. Bristol Development Co.*, 62 Cal.2d 861, 865, 44 Cal.Rptr. 767, 402 P.2d 839 (1965)); *see also United States Leasing Corp. v. duPont*, 69 Cal.2d 275, 70 Cal. Rptr. 393, 403, 444 P.2d 65, 75 (1968). We think, however, that the district court was correct in letting interpretation of this document go to the jury. It is clear from the discussion above that interpretation of this letter rested largely on the credibility of the witnesses of both parties. Each side had a different story to tell. Indeed, each side attached different meanings to this very document. Hence, interpretation of the letter was for the jury, not the court. It is of *no moment*, despite Coachmen's protestations to the contrary, that the district court apparently changed its mind as to who should interpret the letter. The court came to the correct conclusion, which we approve.

**C. The Alleged Sandbagging by the District Court**

■ Coachmen also asserts that a new trial is required in this case because its attorney "all but let up" its defense, deciding not to call an expert witness as planned, when the district court "all but" announced that Coachmen was going to win. While the district court's open and decided change of mind was in some respects unfortunate, the fact remains that Coachmen, by failing to raise this claim below, has waived it. *Gray v. Lacke*, 885 F.2d 399, 409 (7th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990). (Indeed, Coachmen admits that this claim was not dealt with below. Appellant's Reply Brief at 10.) Hence, we will not review Coachmen's claim here. This is not a case where the "ends of justice" or "fundamental fairness" demands excusal of the waiver.

### III. Conclusion

For all the foregoing reasons, we AFFIRM the judgment of the district court.