Anne DOLDER, Special Administratrix of the Estate of Lawrence Dolder, III, Deceased, Plaintiff–Appellee,

v.

MARTINTON TOWNSHIP, a municipal corporation, Defendant–Appellant.

No. 92–1705.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 13, 1992.

Decided July 8, 1993.

Rehearing and Suggestion for Rehearing In Banc Denied Aug. 26, 1993.

**500**

Donald A. Shapiro, Chicago, IL (argued), Richard Doyle, Doyle & Associates, Danville, IL, for plaintiff-appellee.

Sarah Hansen Sotos, Elizabeth A. Knight (argued), Jenna L. Schoeneman, Knight, Hoppe, Fanning & Knight, Des Plaines, IL, Kathryn James Anderlik, Judge & James, Park Ridge, IL, for defendant-appellant.

Before CUMMINGS and COFFEY, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

COFFEY, Circuit Judge.

At approximately 9:00 p.m., May 14, 1986, Richard Schoonveld drove a motorcycle off Pittwood Road in Martinton Township, Illinois ("Martinton" or "Township"), and struck a parked trailer. The violent impact of the crash caused the instant death of Lawrence Dolder, III ("decedent"), the passenger riding on the back of Schoonveld's cycle. Schoonveld survived. Dolder's widow, Anne, as administratrix of her husband's estate, sued Martinton Township under the Illinois Wrongful Death Act, Ill.Rev.Stat. Ch. 70, § 1, alleging negligence in the Township's maintenance of Pittwood Road and in its failure to post sufficient warnings of the curve in the road which Schoonveld missed, causing the accident. This diversity action was tried before a jury, resulting in a $900,-000 verdict for the plaintiff, reduced to $315,-000 by a finding of 65% negligence on the part of the decedent. The Township argued that both the decedent and Schoonveld were intoxicated at the time of the accident and their impairment, not the condition of Pittwood Road, was the proximate cause of the accident. On March 8, 1991, three days after the verdict was rendered, the district court entered an order, *sua sponte*, upholding the jury's finding of liability against Martinton, but set aside the jury's comparative negligence verdict. The court explained that

"[i]t is painfully clear to me that I was in error in allowing the question of decedent's contributory negligence to go to the jury for its consideration.... [T]he trial was tainted by the testimony concerning Schoonveld's drinking.... Under the test in *Pedrick v. Peoria & Eastern Illinois Railroad*, 37 Ill.2d 494, 229 N.E.2d 504 (1967) there was insufficient evidence to support a finding that Schoonveld was intoxicated at the time of the occurrence.... The decedent's intoxication was only relevant on the issue of contributory fault if the driver of the motorcycle was also intoxicated. Since there was insufficient evidence

to decide that the driver was intoxicated, the plaintiff's motion to exclude the evidence of the decedent's intoxication and to withdraw the question of contributory negligence from the jury should have been granted."

The court, citing Fed.R.Civ.P. 59(d), which provides that "[n]ot later than ten days after entry of judgment the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party," ordered a new trial on the question of damages only. The second trial resulted in a jury verdict of $1,500,000 for the plaintiff. Martinton's post-trial motions were denied.

## I.

The district court's March 8 order resulted in an entry of a judgment notwithstanding the verdict ("JNOV") in favor of Dolder on the issue of comparative negligence. *See* Fed.R.Civ.P. 50(b). In diversity cases, state law governs the standard for entry of JNOVs. *Trzcinski v. American Cas. Co.*, 953 F.2d 307, 313 (7th Cir.1992). Under Illinois law, a trial court can override the jury's verdict only when "all the evidence, when viewed in its aspect most favorable to the opponent [of the JNOV motion], so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern Railroad Company*, 37 Ill.2d 494, 229 N.E.2d 504, 513 (1967). We review the district court's decision to enter a JNOV *de novo* and apply the *Pedrick* standard to the record evidence. *Eastman v. Chicago C. & P.R. Co.*, 930 F.2d 1173, 1176 (7th Cir.1991). *See also Trzcinski*, 953 F.2d at 313.

At trial, Martinton Township argued that the decedent was contributorily negligent because he was a passenger on a motorcycle driven by Schoonveld whom decedent knew or should have known was intoxicated. The district court instructed the jury that "[a] person is 'intoxicated' when as a result of drinking alcoholic liquor there is an impairment of his mental or physical faculties so as to diminish his ability to think and act with ordinary care." Under this standard, which neither side challenges, sufficient evidence

was presented to the jury to support a finding that Schoonveld was intoxicated at the time of the motorcycle accident that killed the decedent. According to the two emergency medical technicians ("EMTs") who responded to the accident, Schoonveld was intoxicated when they examined, treated and conveyed him to the hospital, although no blood alcohol test was performed on him after the accident. EMT Joseph Porter testified that he was not only trained to detect intoxication, but that he had a great deal of experience dealing with it because approximately twice a week he administers aid to an intoxicated person. Porter examined Schoonveld's pupils, which he testified responded slowly to the light, an indication of drug or alcohol use. Porter also described Schoonveld as "very combative, kicking us [the EMTs], very loud, voicing his opinions, using a lot of profanity at us" and testified that Schoonveld remained combative during the five to ten minutes he was treated at the accident scene and during the 15 minute ride to the hospital. Because of Schoonveld's aggressive behavior, Porter had to use extra restraints to hold down Schoonveld on the backboard used to immobilize one who they suspect might have suffered a spinal injury. Schoonveld also pulled out his IV. Although Schoonveld denied to Porter that he had been drinking, Porter detected a definite odor of alcohol on his breath. Based on the combination of these observations, Porter concluded that Schoonveld was intoxicated. Porter also testified that he did not believe that Schoonveld's combative behavior was caused by any injuries he might have suffered in the accident. Margaret Dunaway, another EMT at the accident scene, testified that Schoonveld tried to kick her and that she also detected an odor of alcohol on his breath. Dunaway recounted that during the ride to the hospital Schoonveld was "combative and very belligerent and obscene" and based on her observations concluded that Schoonveld was intoxicated. Dunaway also stated that she did not believe that Schoonveld's behavior could be explained by his head injury.

Plaintiff does not deny that Schoonveld and the decedent had been drinking before

the accident, but based on the evidence adduced at trial claims that Schoonveld had not consumed a sufficient quantity of alcohol to make him impaired, even though it is scientifically accepted that even one beer impairs a person to some degree. As we noted above, on the night of the accident, Schoonveld told EMT Porter that he had not been drinking. At trial, Schoonveld claimed that he had only three beers the day of the accident, and that he was not impaired at the time of the accident. However, Dr. Phillip Zumwalt, who treated Schoonveld at the hospital on the night of the accident, testified that an emergency room nurse recorded in a hospital record that Schoonveld had had five beers that day. This impeachment of Schoonveld's testimony (as well as the testimony of the EMTs) might very well have led the jury to doubt his credibility on the question of his impairment at the time of the accident. Zumwalt, however, testified that based on his observation and examination he did not believe Schoonveld was intoxicated, although he did not examine him until two hours after the accident. We note that Dr. Robert H. Kirschner, a forensic pathologist called as a witness by the Township, testified that about twenty to thirty minutes after a person stops drinking the intoxicating effects of the alcohol begin to diminish as the body metabolizes the alcohol. Moreover, courts (including Illinois') have recognized that the effects of alcohol diminish with the passage of time. *Cuellar v. Hout,* 168 Ill.App.3d 416, 118 Ill. Dec. 867, 869–70, 522 N.E.2d 322, 324–26 (1988) (a blood alcohol reading of .064 approximately two hours after the accident indicated that individual had a .104 level at the time of the accident).

The plaintiff argues that testimony given by Dr. Kirschner established that Schoonveld was not intoxicated. In entering the JNOV in favor of the plaintiff on the issue of comparative negligence, the district court cited Kirschner's testimony as eliminating the possibility that Schoonveld was intoxicated. Dr. Kirschner testified that he reviewed Schoonveld's hospital records, the ambulance and

paramedic reports, depositions taken in connection with the accident, and examined pictures of the accident site. However, Kirschner merely testified that *assuming that Schoonveld had drunk only five beers during the afternoon and evening of the day of the accident,* his blood alcohol level would have been below .10 at the time of the accident, the legal minimum under Illinois law above which it is presumed that a "person was under the influence of alcohol." *See* Ill.Rev. Stat. ch. 95½, par. 11–501.2(b)(3). (A blood alcohol level between .05 and .10 does not give rise to a presumption of being under the influence of alcohol, "but such fact may be considered with other competent evidence bearing upon the question whether that person was under the influence of alcohol." Ill. Rev.Stat. ch. 95½, par. 11–501.2(b)(2).) [1] Since the amount of intoxicants that Schoonveld consumed was in dispute, Kirschner's testimony must have failed to conclusively demonstrate to the jury that Schoonveld was not under the influence of alcohol at the time of the fatal accident. Moreover, we note that Susan Vondrak, a toxicologist with the Illinois State police in Springfield, Illinois testified that the decedent's (Dolder's) blood alcohol level was .183 at the time of his death. Dr. Kirschner testified that a blood alcohol of that level indicates that a person is "highly intoxicated." It is undisputed that Schoonveld and the decedent were drinking together during the afternoon and evening immediately prior to the accident.

The record evidence on the question of Schoonveld's impairment was mixed. Under the *Pedrick* standard, a JNOV should be entered only if the evidence so overwhelmingly favored the plaintiff that a verdict in favor of the defendant could not stand. That clearly is not the case before us. Therefore, we disagree with the district court and hold that it should not have entered the JNOV in favor of the plaintiff on the question of comparative negligence.

## II.

■ Martinton argues that under the Local Governmental and Governmental Em-

---

1. In this connection, we note that alcohol affects people in different ways. For example, an individual who is tired, or on certain medications, may become more impaired than another of sim-

ilar size and age while consuming the same quantity of alcohol. Differences in height and weight can also alter one's reaction to alcohol.

ployees Tort Immunity Act (Ill.Rev.Stat. 1981, ch. 85, par. 3–102(a)) ("Act"), it did not owe a duty to the decedent to maintain Pittwood Road in a reasonably safe condition and that therefore the district court should have entered a JNOV in its favor finding that it was not liable to the plaintiff. The Act provides, in pertinent part:

"§ 3–102. (a) Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition *for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used...*"

(emphasis added). Martinton argues that because the decedent (who was highly intoxicated himself) was riding on a motorcycle driven by an intoxicated person the decedent was not using the road with "ordinary care" and therefore he was not an "intended and permitted" user of the road. We agree. In *Curtis v. County of Cook*, 98 Ill.2d 158, 74 Ill.Dec. 614, 616, 456 N.E.2d 116, 118 (1983), a plaintiff sued several local governmental entities after she was injured when the car in which she was a passenger went out of control and struck a signpost. At the time of the accident, the driver of the car was engaged in "speed-clocking", a "form of drag racing in which a motorist attempts to reach the greatest possible speed in the space of a quarter mile." *Id.* The plaintiff argued that the defendants acted negligently because they knew that the signpost was "constantly and repeatedly" used as a quarter-mile marker by "young drivers engaged in 'speed-clocking'." *Id.* The Illinois Supreme Court rejected her claim, holding that "[a]s a passenger in a speed-clocking automobile, [the plaintiff] cannot be said to fall within the class of motorists by whom the defendant's highways were intended to be used" under § 3–102(a). *Id.* 74 Ill.Dec. at 618, 616 N.E.2d at 120. In *La Puma v. Village of Long Grove*, 236 Ill.App.3d 881, 177 Ill.Dec. 769, 771, 603 N.E.2d 839, 840, 842 (1992), an Illinois appellate court, following *Curtis*, held that under § 3–102(a) the Village owed no duty to a passenger injured in an accident

when the driver of the car was intoxicated as measured by a blood-alcohol test, was traveling over the speed limit, and pleaded guilty to both driving under the influence and failing to avoid an accident.

Similarly, *Thompson v. County of Cook*, 222 Ill.App.3d 459, 164 Ill.Dec. 958, 963, 584 N.E.2d 170, 175 (1991), also following *Curtis*, held that under § 3–102(a) the County owed no duty to a passenger killed after the intoxicated driver of the car drove off the road while traveling over the speed limit in an effort to evade a pursuing police car. In its appeal to the Illinois Supreme Court, the plaintiff in *Thompson* argued that the appellate court had misapplied *Curtis* and, in the alternative, that *Curtis* should be repudiated. 154 Ill.2d 374, 181 Ill.Dec. 922, 925, 609 N.E.2d 290, 293 (1993). The Illinois Supreme Court declined the invitation to reconsider *Curtis*, and instead affirmed the *Thompson* appellate court on other grounds, holding that because the actions of the driver of the automobile "in driving drunk, speeding, eluding the police, and disregarding traffic signs were the sole proximate cause of this accident", the plaintiff could not recover damages from the County based on negligent maintenance of the road. 609 N.E.2d at 294. Having reached this conclusion, the Court expressly refused to consider "whether *Curtis* was correctly decided or whether it applies to circumstances such as those present here." *Id.* Thus, *Curtis* remains the law of Illinois.

The plaintiff argues that *Curtis* is inapplicable to the instant case because it did not consider the application of comparative negligence principles to § 3–102(a) claims. She cites in support of this proposition *Palladini v. City of East Peoria,* 134 Ill.App.3d 345, 89 Ill.Dec. 345, 347, 480 N.E.2d 530, 532 (1985). *Palladini* involved a suit against the City arising from the death of man who suffered fatal injuries when his motorcycle struck a large hole in a City road, went out of control, and smashed into a tree. *Id.* 89 Ill.Dec. at 346, 480 N.E.2d at 531. The trial court dismissed the counts against the City alleging that it had been negligent in maintaining and repairing the road because the plaintiffs failed to allege that the decedent "was in the

exercise of ordinary care" when he was killed in the motorcycle accident. *Id.* The *Palladini* court reversed, holding that under Illinois' law of comparative negligence "a party's own negligence merely diminishes his recovery in proportion to his negligence" and that principles of comparative negligence should apply in determining the liability of a local entity under § 3–102(a). *Id.* 89 Ill.Dec. at 347–48, 480 N.E.2d at 532–33. We, however, agree with the *Thompson* appellate panel that the holding in *Curtis* was that under § 3–102(a) the County simply owed no duty to the negligent user of the road. *Thompson,* 164 Ill.Dec. at 962, 584 N.E.2d at 174. As the *Curtis* court stated, the "language [of § 3–102(a)] evinces a legislative intent to extend a duty of care only to those persons by whom the local entity intended the property to be used. As a passenger in a speed-clocking automobile, [the plaintiff] cannot be said to fall within the class of motorists by whom defendant's highways were intended to be used." 74 Ill.Dec. at 618, 456 N.E.2d at 120. The decedent in this case, highly intoxicated himself, was riding on a motorcycle driven by Schoonveld, whom the jury determined to be intoxicated at the time of the accident. The plaintiff does not dispute that the decedent voluntarily chose to ride with Schoonveld. Under *Curtis,* Martinton cannot be held liable for the decedent's death.

### III.

The district court should not have disturbed the original jury's verdict finding that the decedent was negligent. This finding of negligence fatally undermines the plaintiff's claim. We therefore VACATE the entry of judgment in favor of the plaintiff and REMAND to the district court with instructions to enter judgment in favor of the defendant.