91 F.3d 146
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Richard PYATT and Diane Pyatt, Plaintiffs-Appellees,
v.
SCHNEIDER NATIONAL CARRIERS, INCORPORATED and Henry L.
Wubben, Defendants-Appellants.
 No. 95-2779.
 United States Court of Appeals, Seventh Circuit.
 Argued April 12, 1996.
Decided July 15, 1996.
Rehearing and Suggestion for Rehearing En Banc Denied Aug. 12, 1996.
 
 Before CUMMINGS, COFFEY and MANION, Circuit Judges.
 
 ORDER
 I.
 
 1
 On the evening of January 25, 1991, Diane Pyatt was driving her 1980 Chevrolet Citation over an icy bridge when a car attempting to pass slid into a guard rail and then into her path, causing a minor rear-end collision. Neither Diane nor her passenger, husband Richard Pyatt, nor the driver of the other car, Elizabeth Petrovics, was injured. After the drivers talked things over, the Pyatts reentered the icy road only to be sideswiped by a white pickup truck, which knocked off the driver's side mirror. Soon after, a tractor-trailer truck driven by Henry Wubben for Schneider National Carriers, Inc. ("Schneider") rear-ended the Pyatt car, spinning it 360 degrees. Unable to stop because of the ice, the Schneider truck struck the Pyatt car twice more as it spun forward. At trial, the jury heard a statement by Wubben that "if I knew it was [as] slippery as it was, why, I probably wouldn't have been driving as fast. I didn't realize it was as slippery as it was."
 
 
 2
 Concerned about Diane's back, which had given her troubles before, that night the Pyatts went to the hospital. Diane was examined for back injuries and released; Richard was not examined, believing he was fine. However, the next morning Richard couldn't move his neck and shoulders. An x-ray of Richard's spine taken three days later did not reveal anything out of the ordinary, but the physician who examined him, Dr. Benjamin Borowski, recommended physical therapy.
 
 
 3
 For about the next three months, Richard did not work. Dr. Borowski's medical notes from March 13, 1991 indicate that Richard's "neck/shoulder pain was gone." On May 8, 1991, Dr. Borowski recommended that Richard return to work, which he did, but he later injured his back (or aggravated the previous injury) while using a heavy fire hose to hose down a parking garage. Because Diane was unable to work and Richard anticipated losing his employment due to his neck problems, Richard quit his job and the couple moved to the Grand Tower, Illinois area, population 850. Although Diane worked as a home care-giver, Richard Pyatt was unable to find steady work there for three years. One of the reasons was his bad vision which prevents him from working late in the afternoon and at night. He also claims that when he told employers about his neck problems, no one wanted to hire him.
 
 
 4
 About nine months after the accident, on October 21, 1991, Richard was examined by Dr. George Schoedinger, an orthopedic surgeon specializing in the treatment of the neck and spine. Richard gave Dr. Schoedinger an account of the accident on January 25, 1991. He explained that his car was stopped on a bridge when the Schneider truck first hit his car from behind and that as a result his head struck the side of the car. Richard told Dr. Schoedinger that initially he experienced none of his current symptoms, but that later he had neck and interscapular pain as well as pain about his right upper arm. He then spoke of his past evaluation and subsequent physical therapy and of his present neck pain which he described as intermittent and aggravated by daily activities such as lifting, turning his head, and driving. He also described an occasional feeling of tingling about his fingers and stiffness about his right hand. Upon examination, Dr. Schoedinger noted that Richard had scoliosis (curvature of the spine) and decreased range of motion on both sides in lateral bending and that right lateral bending produced posterior neck pain in the midline. X-rays of Richard's neck and dorsal spine were normal, with the exception of some scoliosis. Based on his examination and the information Richard had provided, Dr. Schoedinger concluded to a reasonable degree of medical certainty that Richard suffered from an annular tear in the cervical area as a result of the January 21, 1991 accident.
 
 
 5
 Dr. Schoedinger saw Richard again on March 1, 1994 (shortly before the trial) and noted that his range of neck motion had "decreased markedly." He also diagnosed "splinting," or muscle spasm, a phenomenon where the body attempts to splint the injured portion of the body by making it immobile. Dr. Schoedinger attributed the loss of neck movement to a derangement of the neck's mechanical systems or to a muscle spasm in the neck's anterior. It was his opinion that the loss of neck motion was probably permanent since physical therapy had failed and since the neck was still a problem three years after the accident. In another examination in 1995, defendant's medical expert, Dr. Edwin Carter, likewise found a significant loss of neck movement, though he disagreed with Dr. Schoedinger's diagnosis that Richard had an annular tear of the cervical spine. Dr. Schoedinger admitted at deposition that typically an annular tear would take six weeks to three months to heal.
 
 
 6
 The Pyatts sued Elizabeth Petrovics, the driver of the other car in the first collision, Henry Wubben, driver of the Schneider truck, and Schneider for negligence. Richard claimed $3,020 in lost wages as a direct result of the accident, $38,900 for three years of looking for a job with a bad neck, $2,975.32 in medical bills, plus some additional miscellaneous costs. Diane claimed loss of consortium. The jury completely exonerated Ms. Petrovics and rejected Diane's consortium claim, but found in favor of Richard in his claims against Wubben and Schneider. The award totaled $141,892.92: $50,000 for pain and suffering; $50,000 for permanent disability; $38,917.60 for lost wages; and $2,975.32 for medical expenses. Defendants' motion for judgment as a matter of law was denied. Defendants appeal.
 
 II.
 
 7
 Defendants raise three issues on appeal: (1) whether the district court properly applied the federal as opposed to state standard in evaluating defendants' post-trial motion for judgment as a matter of law; (2) whether the evidence was sufficient to support the jury's verdict; and (3) whether there was a reasonable basis for the damages assessed. We address each of these issues in turn.
 
 A.
 
 8
 Mayer v. Gary Partners & Co., 29 F.3d 330, 334-35 (7th Cir.1994), holds that the standard in federal court for judgment as a matter of law is a federal not state standard, namely, "whether reasonable minds could deem the evidence adequate under the governing [state] substantive rule." We decline the defendants' invitation to revisit this holding. The rationale elaborated in Mayer for applying federal instead of state standards to motions for judgment as a matter of law as well as to motions for summary judgment is compelling and now the settled law of this circuit. Id. at 334; see, e.g., Roboserve v. Kato Kagaku Co., 78 F.3d 266, 275 (7th Cir.1996) (federal standard controls, citing Mayer ). Nothing in this case suggests the issue should be reopened after it was firmly resolved in Mayer.
 
 B.
 
 9
 Defendants argue that the evidence was insufficient to support the jury's finding of negligence, or in other words, that the district court erred in denying their motion for judgment as a matter of law. We disagree. "The elements necessary of proof in a negligence action are duty, breach, injury and causation." Lee v. Chicago Transit Authority, 605 N.E.2d 493, 505 (Ill.1992). Or more precisely: "the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from that breach." Arroyo v. Chicago Transit Authority, 643 N.E.2d 1322, 1328 (Ill.App.Ct.1994). There is no question that Wubben, the driver of the Schneider truck, owed Richard, the passenger of another vehicle on the same public road, a duty of reasonable care at the time of the accident; defendants do not deny this. Moreover, Wubben admitted that had he known the road was so slippery, he would have slowed down. Given that admission and the details of the accident presented at trial, the jury could reasonably have concluded that Wubben should have been aware of the slippery road conditions and slowed down, and that his failure to do so was a breach of his duty of reasonable care to the Pyatts.
 
 
 10
 Therefore, the decisive question is whether there was sufficient evidence of an injury proximately caused by Wubben's negligence. We have an injury: Richard undoubtedly has neck problems; even Dr. Carter, defendants' expert witness, agreed with that. But is there sufficient evidence for a jury to reasonably conclude that at least some of those problems were caused or aggravated by the Schneider-Pyatt accident? We believe there is. Wubben's negligence resulted in his tractor-trailer truck slamming into the Pyatt's small car three times. The force of one impact spun the car around 360 degrees. Any reasonable trier of fact would view these events as having created the potential for serious injury or death. Though not seriously injured, almost immediately Richard experienced neck and shoulder stiffness and pain, for which Dr. Borowski, who examined Richard soon after the accident, recommended physical therapy. Thus there was some evidence from which a jury could infer injury proximately caused by Wubben's negligence.
 
 
 11
 Defendants counter that according to Dr. Borowski's medical notes, three months after the accident Richard's pain was gone. They further suggest that the reemergence of back pain was due to a subsequent work-related injury. Against this view stands Dr. Schoedinger's diagnosis, based on Richard's account of the events, that the accident caused an annular tear in the cervical area which had yet to heal nine months after the accident. Defendants challenge the probative value of this diagnosis because Richard did not provide Dr. Schoedinger with details of his neck problems before the accident and the injury he sustained at work after the accident. Defendants have a point. The Federal Rules of Evidence allow an expert witness to give opinion testimony based on evidence "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed.R.Evid. 703. Naturally, if an expert's factual basis is inaccurate, his opinion testimony will be less valuable. Thus to the extent it was based on incomplete information, Dr. Schoedinger's opinion that the January 21, 1991 accident caused an annular tear was subject to serious challenge. But that does not mean it was necessarily wrong. The fact that Richard had prior neck problems and later injured his back at work does not imply that the accident with the Schneider truck left Richard unscathed or defendants immune. That Richard had a prior similar injury does not inoculate defendants against negligence liability. Montgomery v. Terminal Railroad Ass. of St. Louis, 392 N.E.2d 77, 81 n. 1 (Ill.App.Ct.1979) ("In Illinois, a tortfeasor takes his victims as he finds them, and a pre-existing weakness of the victim is irrelevant, where the injury resulting from the tort caused the disability."). The same holds for a subsequent injury. Cf. Gertz v. Campbell, 302 N.E.2d 40, 43-44 (Ill.1973) (original tortfeasor liable for aggravation of injury caused by subsequent tortfeasor (negligent physician) though original tortfeasor entitled to indemnification for damages caused by subsequent tortfeasor). It may be that Richard was completely recovered from this accident when he was injured at work, in which case defendants should not be liable for Richard's subsequent inability to find work. Or it may be that the injury Wubben caused was in fragile remission when it reappeared during the course of Richard's reasonable employment activities, in which case defendants could be found liable. Which of these or other possible interpretations of the evidence to believe was for the jury to decide. See Campbell v. United States, 904 F.2d 1188, 1192 (7th Cir.1990) (trier of fact to determine weight to be given to testimony of expert medical witnesses); McGrath v. Zenith Radio Corp., 651 F.2d 458, 469 (7th Cir.1981) (causation issue for trier of fact). The jury apparently concluded the best interpretation was that the injury Richard sustained in the accident did not fully heal and was a significant cause of Richard's employment difficulties. We cannot say the jury's decision was unreasonable as a matter of law.
 
 C.
 
 12
 Defendants expend a paragraph at the end of their main brief on a cursory attack on the damages award, so we too shall not dwell long on the matter. Their argument is basically that the award was not linked to the evidence because the evidence did not show defendant caused the injury. They also contend that because Richard voluntarily left his prior job, the jury's award of three years of lost wages was improper. Our standard of review is highly deferential. "Because fixing a damage award is an exercise in fact-finding, only those awards that are monstrously excessive, born of passion and prejudice, or not rationally connected to the evidence may be altered." Pincus v. Pabst Brewing Co., 893 F.2d 1544, 1554 (7th Cir.1990).
 
 
 13
 As we held above, the evidence is sufficient to support the jury's finding of negligence; so Richard was entitled to some damages. And there was evidence that one reason Richard left his job was that the injuries Wubben inflicted rendered him unable to perform his work duties, which he anticipated would result in his termination. The Pyatts also desired to relocate. That alone would have required Richard to search for new employment. Defendants cite no authority suggesting that Richard cannot be compensated for the difficulties he experienced due to his injuries while searching for a new job. Injured plaintiffs are not forever locked into their present employment. The jury was entitled to compensate a man who for a time was stripped of his ability to obtain a better job by defendants' negligence. As to the amount, defendants have not presented us with anything suggesting that the damages award was "monstrously excessive, born of passion and prejudice, or not rationally connected to the evidence." Pincus, 893 F.2d at 1554. We therefore have no grounds for upsetting it.
 
 
 14
 AFFIRMED.