Cynthia MCKNIGHT, Plaintiff,

v.

The PURDUE PHARMA COMPANY; Purdue Pharma LP; Purdue Pharma Inc.; Purdue Frederick Company; PF Laboratories Inc.; Defendants.

No. CIV.A. 9:04–CV–116.

United States District Court,
E.D. Texas,
Lufkin Division.

March 21, 2006.

Andrea Bierstein, Jayne Conroy, Paul J. Hanley, of Hanly Conry Bierstein & Sheridan LLP, New York City, John A. Bruegger, Steven D. Davis, Tor A. Hoerman, Sapna S. Patel, Gary L. Payne, Jo Anna Pollock, Shelby C. Reed, Eric M. Terry, of SimmonsCooper LLC, E. Alton, IL W. Mark Lanier of the Lanier Law Firm, Houston, TX, for Plaintiffs.

Thomas E. Butler and Phoebe A. Wilkinson of Chadbourne and Park, New York City, Jared Issac Levinthal, Knox D. Nunnally, and Kenneth Scott Statham of Vinson & Elkins, Houston, TX, Robert K. Woo, Jr. of King & Spalding, Atlanta, GA, for Defendants All Purdue Defendants.

Jared Issac Levinthal, Knox D. Nunnally, and Kenneth Scott Statham of Vinson & Elkins, Houston, TX, Phoebe A. Wilkinson of Chadbourne and Park, New York City, for P F Laboratories, Inc.

### ORDER DENYING MOTION TO STRIKE TESTIMONY

CLARK, District Judge.

McKnight sued the Purdue Defendants[1] ("Purdue") claiming that she became addicted to OxyContin. She identified Dr. Norman Miller, M.D. as an expert witness who would testify that she was addicted to the drug and that it caused her various mental and physical problems. Purdue objected, asserting that Dr. Miller's proposed testimony did not meet the requirements of Fed.R.Evid. 702. After considering the materials and arguments filed by the parties, or submitted at the *Daubert* hearing, the court overrules Purdue's objection.

■ This dispute highlights misunderstandings which surround the rules governing expert testimony. Fed R. Civ. P. 26(a)(2) requires the proponent of opinion testimony from a retained expert to disclose not only the identity of such an expert, but a report containing:

1. A complete statement of all opinions to be expressed and the basis and reasons therefore;

2. The data or other information considered by the witness in forming the opinions;

3. Any exhibits to be used as a summary of or support for the opinions;

4. The qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years;

5. The compensation to be paid for the study and testimony;

6. A list of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed.R.Civ.P. 26(a)(2). The main goals of these requirements are to accelerate the exchange of basic information, to eliminate paperwork, and to reduce costs by eliminating the need for depositions. *See* Fed. R.Civ.P. 26 Advisory Committee note (1993 Amendments).

This paragraph imposes an additional duty to disclose information regarding expert testimony sufficiently in advance

---

1. The Purdue Defendants include The Purdue Pharma Company, Purdue Pharma LP, Pur- due Pharma Inc., Purdue Frederick Company, and PF Laboratories Inc.

of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses....

... The information disclosed under the former rule ... was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert ....

Fed.R.Civ.P. 26 Advisory Committee note (1993 Amendments). Advisory committee notes "do not have the force of law, but they are instructive in determining Congress's intent ...." *Moody Nat. Bank of Galveston v. GE Life & Annuity Assurance Co.*, 383 F.3d 249, 253 (5th Cir.2004).

■ An expert's report prepared in accordance with the requirements of Rule 26(a)(2), should also serve a purpose which may not have been contemplated when the rule was adopted, namely, permitting the court to evaluate the expert's testimony under Fed.R.Evid. 702 and the *Daubert–Kumho Tire* line of cases. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The format required by Fed.R.Civ.P. 26(a)(2) is not complicated, but it would normally result in a report that addresses the factors a court must consider in determining the admissibility of the opinions.

Unfortunately, a practice seems to have developed by which experts submit a barebones report. The opposing party routinely takes the expert's deposition, frequently after filing requests for production. Lengthy *Daubert* objections are then filed with deposition excerpts and other "evidence." Finally, a hearing is held, at which time the parties may present live testimony from experts, or may just argue from affidavits and documents which have been submitted. This prolonged procedure is contrary to the mandate that the rules of procedure "be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. The obvious purpose of the detailed expert report required by Fed.R.Civ.P. 26(a)(2) is to reduce the need for expensive and time consuming paper discovery and depositions.

■ The burden is on the proponent of expert testimony to establish that the testimony meets the requirements of, and is admissible under, Fed.R.Evid. 702; *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir.2002). It is true that a party may waive a challenge to an unqualified expert by failing to object, or by neglecting to obtain a ruling on an objection. *See, e.g., Gruca v. Alpha Therapeutic Corp.*, 51 F.3d 638, 643 (7th Cir.1995). But such cases only hold that the court should rule on the issue, and that a party may waive an objection if a ruling is not obtained. The parties have no right to, and should not expect to have, a hearing at which an expert is allowed to expound upon a skimpy, poorly written report.

In the present case, Plaintiff and Defendants each objected to two opposing experts. As a matter of convenience, the court scheduled a hearing on the objections to all four experts. The reasons for the rulings as to three of the experts are stated on the record.

■ The fourth expert is Dr. Norman Miller, M.D., designated by Plaintiff to testify as to whether Ms. McKnight "experienced addiction, dependence, intoxication and withdrawal from OxyContin...." Defendants filed a motion to exclude on the grounds that Dr. Miller's report "fails to define addiction, to articulate the criteria that are to be applied in diagnosing addiction, or to spell out the basis for Dr. Miller's diagnosis here." Defendants also complained that in other cases, involving

other patients, Dr. Miller's testimony did not satisfy the standards of reliability.

Dr. Miller's report, by itself, does not establish that his opinion is the product of reliable principles and methods. *See* Fed. R.Evid. 702(2). Unlike a physical ailment, psychological conditions usually can not be determined by reviewing objective test results such as x-rays or blood tests. Diagnosis of a mental illness is typically made in reference to a standard work which describes symptoms, such as the American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 181 (4th ed. 2000) (DSM–IV). But Dr. Miller's report does not explain the source of the criteria he used to diagnose addiction, intoxication, or withdrawal.[2]

Dr. Miller's report also does not show how reliable principles and methods have been applied reliably to the facts of the case. In the "Diagnosis" section of his report, he narrates McKnight's history, and, without outlining any basis or methodology, he states his conclusion. Dr. Miller asserts that Ms. McKnight showed signs and symptoms of addiction, dependence, intoxication, and withdrawal, but did not state why those "signs and symptoms" indicated these conditions as opposed to some other mental illness. The report gives no hint as to why other diagnoses were not appropriate, nor why he believed her problems were caused by OxyContin and not by the other medications she took, or by her other physical ailments.

At the hearing, Plaintiff offered no new evidence or explanation in support of Dr. Miller's opinion. She did not call him to testify. However, Defendants introduced his deposition. This made it clear that Dr. Miller did in fact use DSM–IV as the foundation of his opinion, and gave some detail about how he interviewed Ms. McKnight and reviewed her records. When asked by Defendants' attorney, he explained why he thought that OxyContin was a cause of her problems, and why those problems translated into a diagnosis of addiction and dependence under the criteria set out in DSM–IV. In response to other questions by defense counsel, Dr. Miller explained why he thought that OxyContin, rather than other factors such as other medications, weight, and arthritis were the main cause of Plaintiff's ailments.[3] In short, under the guidance of counsel, Dr. Miller filled in the gaps in the predicate of Rule 702(2)-(3), which his report had left open.

Defendants' reliance upon Dr. Miller's testimony about other patients in other cases is misplaced. The fact that one has grounds for cross-examination, does not mean testimony is inadmissible. Prior contradictions may affect credibility, but that will be determined by the jury.

There was no challenge to Dr. Miller's qualifications in the areas of education or experience. An experienced doctor's testimony about Ms. McKnight's condition, and the causes for it, is clearly relevant and would assist a jury. His report was lacking in detail. Nevertheless, the supplementation provided in his deposition leads the court to conclude that: (1) his testimo-

---

**2.** Of course, reliability is not measured by a generic test. *Mathis*, 302 F.3d at 460. Instead of relying upon standard works, a doctor might outline his experience with similar cases, discuss the patient's history and symptoms, describe his methods of testing and analysis, and after accounting for other known factors, state the basis for his conclusion that a patient's properly defined and described condition is caused by a particular drug. Dr. Miller's report makes no such attempt.

**3.** An expert's analysis must account for major factors. Omission of some minor variables may only render the analysis less probative. *See Tyler v. Union Oil Co. of California*, 304 F.3d 379, 393 (5th Cir.2002).

ny is based on sufficient facts and data; (2) the testimony is the product of reliable principles and methods, set out in DSM–IV; and (3) notwithstanding the inherently subjective nature of a psychiatric diagnosis, the witness has applied the principles and methods as reliably and as rigorously to the facts of this case as would be expected by others in the field. Unless a higher court determines that testimony of psychiatrists and psychologists is inherently unreliable, Dr. Miller's testimony in this case is admissible, even though it is open to vigorous cross-examination, and may be contradicted by other experts.

IT IS THEREFORE ORDERED that Purdues' Motion to Strike Dr. Norman Miller [**Doc. # 107**] is **DENIED.**