In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 20-2656

KATHERINE BLACK,

*Plaintiff-Appellant,*

*v.*

CHERIE WRIGLEY and PAMELA KERR,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17 C 101 — **Matthew F. Kennelly**, *Judge.*

---

ARGUED APRIL 15, 2021 — DECIDED MAY 10, 2021

---

Before KANNE, ROVNER, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* Katherine Black sued two defend-
ants for defamation and intentional infliction of emotional
distress. Ultimately, the trial did not go as Katherine had
hoped, and the jury rejected her claims.

Katherine now argues that her trial was riddled with er-
rors and asks that we overturn the jury's verdict for several
reasons. However, our analysis discloses no errors warranting

a reversal, and therefore, Katherine's request for a new trial is denied.

## I. BACKGROUND

Plaintiff Katherine Black[1] and her husband Bernard are professors at Northwestern University Pritzker School of Law. In 2012, Bernard's mother passed away and left behind a roughly $3 million estate. The Blacks expected to inherit about one-third of that estate, but it turns out that Bernard's mother cut them out of her will and left virtually the entire estate to Bernard's homeless and mentally ill sister, Joanne, who lived in Denver. So in late 2012, Bernard had himself appointed Joanne's conservator and then worked to redirect much of her inheritance to himself and Katherine.

Meanwhile, Bernard's cousin, Defendant Cherie Wrigley, sought to locate Joanne and contacted Esaun Pinto—Joanne's friend and a private investigator—to find her. Pinto was successful.

Joanne relocated to New York in 2013. Upon her return, Bernard filed suit in New York state court seeking to be appointed guardian of Joanne's property. Wrigley filed a cross-petition to be appointed Joanne's guardian instead.

Back in Denver, Joanne's guardian *ad litem*, Gayle Young, discovered that Bernard had diverted much of Joanne's inheritance to himself. As a result, Young hired Defendant Pamela Kerr, a forensic accountant, to investigate Bernard as well as Pinto. Pinto served as Joanne's representative payee and had been withdrawing funds from her account.

---

[1] Katherine also goes by the last name Litvak.

On April 2, 2015, the Denver probate court held a hearing that became contentious and, that day, entered an order suspending Bernard as Joanne's conservator and stating that "Pinto shall provide a complete accounting with documentation of all funds that were held under his control to Ms. Kerr" so that she could investigate.

The hearing stoked tensions; afterward, Wrigley allegedly said to Katherine, "you, you, you need a sex change operation. And I will arrange this for you, whether you want it or not." Wrigley then allegedly confronted Katherine at the airport and threatened to file a false report with child services to have her children taken away.

The Denver probate court ultimately resolved the dispute against Bernard and found that he committed civil theft by stealing $1.5 million from Joanne. After trebling damages under Colorado law, the court entered a $4.5 million judgment, which was affirmed on appeal. *See Black v. Black*, 422 P.3d 592 (Colo. App. 2018).

The New York guardianship proceedings continued. On January 7, 2016, Katherine submitted a twenty-three-page letter to the New York court laying out her contentions regarding Joanne and the Denver probate case. Katherine's letter bore a Northwestern University letterhead and, among other things, alleged "theft and misappropriation of Joanne's assets by Pinto" and asserted that "the Colorado Judge Found those Allegations credible Enough to Authorize an Investigation of Pinto's Conduct by a Forensic Accountant."

Soon afterward, Wrigley called the deans of Northwestern's law and business schools (Bernard worked in both) to complain that Katherine had used Northwestern letterhead to

make a false statement to the court. Kerr also called the law-school dean and sent a draft letter to Wrigley that she had prepared for the dean. In pertinent part, Kerr's letter quoted the above portion of Katherine's letter and asserted that this claim was "100% false" and "completely false."

Kerr did not send this letter to Northwestern. But Wrigley thought she had, so Wrigley attached it to an ethics complaint that she then submitted to Northwestern. Wrigley's complaint also asserted that Katherine was "using [Northwestern's] letterhead to slander people and fight a personal case."

On January 6, 2017, Katherine sued Wrigley and Kerr in federal district court in Chicago. She brought claims against both of them for defamation (based on the various statements submitted to Northwestern) and against Wrigley for intentional infliction of emotional distress (based on the threats she had allegedly made to Katherine).[2]

Trial began in August 2019 and lasted about a week. Nothing went as Katherine had hoped—especially on Friday, which was supposed to be the day of closing arguments, when Katherine's trial counsel, Donald Homyk, informed the court that he had just "been advised by [Katherine] that she elects to present her own closing argument." The court denied the request because Katherine was "not a pro se litigant" and was "represented by counsel." Katherine asked if she could "fire [her] counsel now," to which the court responded, "That would be what I call gamesmanship. … So the answer is no."

---

[2] Katherine also sued Melissa Cohenson and her law firm, Brian A. Raphan, P.C., who represented Wrigley in the New York court proceedings. Those claims, and other claims against Wrigley and Kerr, were dismissed and are not relevant to this appeal.

After a break, Homyk asked the court to reconsider its ruling and also asked "for an emergency motion to continue the closing arguments until Monday morning." He represented that if the court granted the continuance, he, not Katherine, would give the closing. The court denied the motion to reconsider, reiterating its belief that Katherine was attempting "to manipulate the proceeding."

Homyk again asked for a continuance until Monday and said, "I guess set me up for malpractice. Whatever. … I really don't care anymore, Judge." He said he knew he could "pull [it] together … by Monday" but was "not emotionally ready to do this right now."

The court assured Homyk that he had "done a more than competent job" during trial. Then the court addressed Katherine directly and explained that it could not "trust [her] to follow the rules" based on her performance as a witness, during which she repeatedly violated the court's instructions not to volunteer information inappropriately.[3]

Katherine promised the court that if the case were continued to Monday, she "will not represent [her]self." But then she indicated that she might bring in a different lawyer, and the court responded, "This is why I'm not continuing the closing argument. … The request is denied. We are starting the closing arguments in ten minutes."

---

[3] Katherine had at least one outburst in court, as well, which caused the court to admonish her: "What just happened here … this will not happen again. If it happens again, you will be held in contempt of court. It is not appropriate. You have a lawyer. You chose to have a lawyer. You chose to have several lawyers. You are not representing yourself. Do you understand what I'm telling you?"

Then things escalated further, when Homyk implored:

> I need to put this on the record right now, Judge. I'm
> physically ill right now. … I'm physically unable to
> continue with the closing argument today. … I'll tell
> you, Judge. Hold me in contempt. I'm physically ill
> right now. I am. I'm sorry. I hate to say that in front
> of a courtroom full of people. I can't do it right now.
> I will for sure be able to do it on Monday.

The experienced trial judge again, however, exercised a
helpful degree of patience, relented, and continued closing ar-
guments until Monday. But he appropriately added a stern
warning that if Homyk did not appear, "a warrant is going to
be issued to hold you in contempt. … [T]here's going to be
hell to pay … if something goes wrong between now and
then."

True to his word, Homyk showed up on Monday and fin-
ished the trial. Still, the jury rejected Katherine's claims and
returned a verdict for Defendants. Katherine appeals *pro se*
(evidently having dispensed with Homyk) and presents no
shortage of issues for us to resolve.

## II. ANALYSIS

Katherine maintains that the district court erred in several
ways: first, by excluding numerous pieces of evidence that
should have been admitted; second, by allowing improper
statements by defense counsel in closing argument; third, by
declining to give a jury instruction on one of her defamation
claims; and fourth, by denying Katherine's request to give her
own closing argument, or hire new counsel to do so, after her
lead lawyer suffered some sort of breakdown after the close
of evidence. We address these asserted errors in turn.

*A. Evidentiary Decisions*

Katherine argues that the district court erred in excluding six pieces of evidence. Such evidentiary decisions are normally reviewed for abuse of discretion. *Fields v. City of Chicago*, 981 F.3d 534, 543 (7th Cir. 2020) (citing *Lewis v. City of Chi. Police Dep't*, 590 F.3d 427, 440 (7th Cir. 2009)). But if there were no objections to a district court's decisions at trial, we may review only for plain error, under which one must show "(1) that exceptional circumstances exist, (2) that substantial rights are affected, and (3) that a miscarriage of justice will result if the [plain-error] doctrine is not applied." *Stringel v. Methodist Hosp. of Ind., Inc.*, 89 F.3d 415, 421 (7th Cir. 1996) (quoting *Prymer v. Ogden*, 29 F.3d 1208, 1214 (7th Cir. 1994)).

First, Katherine claims that the district court erred by admitting the wrong portion of her January 7, 2016 letter to the New York court. She contends that the court should have admitted the portion of the letter stating that "the Colorado Judge Found those Allegations credible Enough to Authorize an Investigation of Pinto's Conduct by a Forensic Accountant." This is the statement that Kerr's letter later called "100% false" and "completely false" (which are, in turn, the alleged defamatory statements). Instead, the court admitted a passage of the letter that Katherine argues was materially different and gave Defendants room to argue that the allegedly defamatory statements were true.[4]

---

[4] The separate but similar passage admitted at trial stated, "The Colorado court found allegations of Pinto's misconduct sufficiently credible and troublesome to order an investigation of Pinto by the court-appointed forensic accountant, Pamela Kerr."

"As we have noted in the past, 'a party cannot complain of errors which it has committed, invited, induced the court to make, or to which it consented.'" *Sanchez v. City of Chicago*, 880 F.3d 349, 360 (7th Cir. 2018) (quoting *Int'l Travelers Cheque Co. v. BankAmerica Corp.*, 660 F.2d 215, 224 (7th Cir. 1981)). And a deferential, line-by-line reading of the transcript here shows that Katherine's attorney consented to the inclusion of the language that was admitted at trial.

The portion of Katherine's letter that the court admitted began on the bottom of page 17 and carried over to the top of page 18. (The passage that Katherine argues *should* have been admitted was in the middle of page 17.) At trial, the court asked Katherine's lawyer, Homyk, what part of the letter should come in. Homyk answered, "page 22, at the bottom," before realizing that he was mistakenly reading the document's Bates number. Defense counsel corrected him: "17, your Honor." The court responded, "Okay. So it's the … carryover paragraph at the bottom of page 17 and the top of page 18 of the letter by the plaintiff on the 7th of January. Is that what you're saying?" Defense counsel replied, "Correct," and Homyk said nothing. Moments later, the court reiterated its understanding that both parties agreed "that the carryover paragraph at the bottom of page 17 and the top of page 18 should come in. That's fine." Homyk again did not object.

Homyk's acquiescence to the court's decision is confirmed by an exhibit that he later submitted—a redacted version of the letter showing only the passage that Katherine now claims is incorrect. We therefore find that Katherine, through Homyk, consented to the court's admission, so we do not find plain error.

Second, Katherine sought to introduce parts of the transcript from the April 2, 2015 Denver probate court hearing, but the district court excluded the transcript in part because it was "unnecessarily cumulative in a way that significantly outweighs its probative value." In particular, the portions of the transcript that Katherine wanted admitted provided information that was already contained in the Denver court's April 2, 2015 order, which *was* admitted at trial. We see no abuse of discretion in that decision.

Third, Katherine says that the district court erred by excluding certain emails between Kerr and Bernard, which would have shown that Kerr knew her statements were false. The emails Katherine discusses in her brief *were* included at trial, but assuming she's referring to the emails that were actually excluded, we do not see how the district court abused its discretion; the court explained that Kerr already testified about her specific communications with Bernard and that Katherine already established all she could have hoped to establish from the emails.

Fourth, Katherine sought to introduce several documents from the New York guardianship proceedings, including a temporary restraining order entered against Wrigley based on her supposed threats to Katherine. The district court excluded this evidence as "highly and unfairly prejudicial because the jury would understand it as some sort of third-party judicial confirmation of the accuracy of the allegations in this case, which would have been misleading." There was no abuse of discretion in this conclusion.

Fifth, Katherine moved to introduce under Federal Rule of Evidence 803 a memo purportedly written by a Northwestern administrator. The court excluded this memo as inadmissible

hearsay. On appeal, Katherine makes the entirely new argument that the document was admissible under Rule 801(d)(1)(B) to rebut a recent charge of fabrication. That argument is forfeited, "and we decline to exercise our discretion to review further because [Katherine] has not cleared the high bar of plain error by showing extraordinary circumstances resulting in a miscarriage of justice." *Walker v. Groot*, 867 F.3d 799, 807 (7th Cir. 2017).

Finally, Katherine claims that she sought to introduce evidence to show that Wrigley lied under oath, including Wrigley's deposition transcript and a privilege log from separate litigation. But she never attempted to use or introduce the privilege log at trial, and she only sought to use the deposition after her last witness testified. In any event, the court thoroughly explained after trial that the deposition transcript was unfairly prejudicial, "did not go to the merits of any of the claims against Wrigley," and "would not reasonably lead to the inference that Wrigley committed perjury in this case." There was no error, let alone plain error, in these conclusions.

We therefore conclude that none of the district court's evidentiary decisions warrants a new trial.[5]

---

[5] Katherine also argues that the cumulative effect of the district court's evidentiary errors warrants a new trial. That argument was forfeited in the district court. Regardless, it cannot succeed given our above conclusions. *See Christmas v. City of Chicago,* 682 F.3d 632, 643 (7th Cir. 2012) (requiring "multiple errors" that "were so severe as to have rendered [the] trial fundamentally unfair" (quoting *United States v. Powell,* 652 F.3d 702, 706 (7th Cir. 2011)).

*B. Statements at Closing Argument*

Katherine's next argument for a new trial concerns allegedly improper statements that defense counsel made during closing arguments.

"[T]he 'district court has considerable discretion in supervising the arguments of counsel, and we will reverse a verdict only where the court has abused that discretion.'" *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 730 (7th Cir. 1999) (quoting *Trytko v. Hubbell, Inc.*, 28 F.3d 715, 727 (7th Cir. 1994)). "To warrant a new trial, '[s]tatements made during closing argument must be plainly unwarranted and clearly injurious to constitute reversible error.'" *Id.* (alteration in original) (quoting *Gruca v. Alpha Therapeutic Corp.*, 51 F.3d 638, 644 (7th Cir. 1995)). No surprise, then, that "improper comments during closing argument rarely rise to the level of reversible error." *Id.* (quoting *Probus v. K-Mart, Inc.*, 794 F.2d 1207, 1210 (7th Cir. 1986)).

What's more, when a party in a civil case fails to object to improper statements in closing argument, we have steadfastly refused to review even for plain error. *Kafka v. Truck Ins. Exch.*, 19 F.3d 383, 385 (7th Cir. 1994) ("[N]o plain error doctrine exists [in civil cases] to remedy errors which are alleged to have occurred during closing argument." (alteration in original) (quoting *Deppe v. Tripp*, 863 F.2d 1356, 1364 (7th Cir. 1988))). Katherine concedes that she objected to only one statement during the defense's closing argument, so that's the only statement we discuss, and the rest are waived. *See Soltys v. Costello*, 520 F.3d 737, 745 (7th Cir. 2008).

Katherine objected that defense counsel "lied" when he argued in closing that Katherine "invented another wrongdoer to deflect attention from Bernard Black. That's poor Mr. Esaun

Pinto." The court overruled the objection because defense counsel "was suggesting an inference based on the evidence, which attorneys have leeway to do in their closing argument."

We agree with the district court. "Attorneys have … leeway in closing arguments to suggest inferences based on the evidence, highlight weaknesses in the opponent's case, and emphasize strengths in their own case." *Id.* (citing *Jones*, 188 F.3d at 731). What one invested litigant might call a lie, an impartial observer might call a permissible inference based on the evidence. Moreover, the court instructed the jury that "closing arguments … are not evidence," and "[i]f the evidence as you remember it differs from what the lawyers said, your memory is what counts." "We have repeatedly found that jury instructions of this sort mitigate any prejudicial effect of potentially improper remarks made by counsel during closing argument." *Jones*, 188 F.3d at 732.

Therefore, the district court did not abuse its discretion in overruling Katherine's objection.

*C. Jury Instructions*

Katherine next argues that the district court erred by omitting a jury instruction on her defamation claim against Wrigley. Once again, Katherine never objected to the court's "failure to give an instruction." Fed. R. Civ. P. 51(d)(1)(B). Thus, we "may consider a plain error [only] if the error affects substantial rights." *Id.* 51(d)(2); *see McLaughlin v. State Farm Mut. Auto. Ins. Co.*, 30 F.3d 861, 868 (7th Cir. 1994).

We agree that Katherine was likely entitled to an instruction on her defamation claim against Wrigley. Based on the complete record, we cannot agree with Defendants that Katherine dismissed that claim before trial. Although Katherine's

attorney at first represented to the court that they "d[id] not intend to pursue the defamation claim against Wrigley at trial," leaving only the intentional infliction of emotional distress claim, he then filed a motion (pursuant to the court's request) specifically seeking dismissal of only the "defamation claim *for Cherie Wrigley's statement about 'slander'*" (emphasis added). That motion made clear that "Katherine continues to allege … that Wrigley's action in uploading to … Northwestern … Kerr['s] defamatory letter constitutes defamation per se as to both Kerr, who wrote the letter, *and Wrigley, who uploaded the letter to Northwestern University*" (emphasis added).

The court granted the motion, and afterward, Defendants submitted revised jury instructions to "account for the latest changes in the contours of the case following the dismissal of *one* of the defamation *claims* against Ms. Wrigley" (emphases added). Sure enough, Defendants proffered an instruction on the defamation claim against Wrigley based on the letter to Northwestern.

It thus appears that Katherine's defamation claim against Wrigley based on the "100% false" and "completely false" statements simply fell through the cracks. She had good reason to expect an instruction on it, such as the one Defendants themselves submitted. It is therefore possible that the district court committed plain error by omitting an instruction on that claim and by omitting the claim from the verdict form.

Despite all this, even if "the district court clearly erred by [omitting the] instruction, we find that [Katherine] has not met [her] 'burden of establishing that the error affected substantial rights, i.e., that the outcome probably would have been different without the error.'" *Prod. Specialties Grp., Inc. v. Minsor Sys., Inc.*, 513 F.3d 695, 700 (7th Cir. 2008) (quoting

*United States v. Pree*, 408 F.3d 855, 869 (7th Cir. 2005)).
"[W]here appellants cannot articulate how they were affected
by the refused jury instruction, let alone how their 'substantial
rights' were affected, there is no reason for this court to inter-
fere" with the jury's verdict. *Consumer Prod. Rsch. & Design,
Inc. v. Jensen*, 572 F.3d 436, 440 (7th Cir. 2009) (citing *Ammons–
Lewis v. Metro. Water Reclamation Dist. of Greater Chi.*, 488 F.3d
739, 751 (7th Cir. 2007); *Higbee v. Sentry Ins. Co.*, 440 F.3d 408,
409 (7th Cir. 2006)).

Given the evidence and arguments presented at trial, plus
the jury's verdict in favor of Defendants on every one of Kath-
erine's claims, "[w]e conclude that the jury probably would
have found" for Wrigley "even if it had been [properly] in-
structed." *Prod. Specialties Grp., Inc.*, 513 F.3d at 700. Most tell-
ingly, the jury found that Kerr did *not* commit defamation in
making the exact same statements that formed the basis of the
defamation claim against Wrigley. Katherine does not persua-
sively explain how or why the same jury probably would
have come to a diametrically opposite conclusion on the def-
amation claim against Wrigley. After all, the main issue of the
case, as presented to the jury by both the plaintiff and the de-
fense, was whether the allegedly defamatory statements were
true or false.[6] Defendants' argument that the statements were
true evidently succeeded as to Kerr, and there is no reason to
suspect that it would have failed as to Wrigley, as both claims
were based on the same statements.

---

[6] Katherine's attorney, for example, argued to the jury that "the only
issue for you to decide is whether it was a hundred percent false that …
Kerr … was authorized to conduct any investigation of Pinto." The de-
fense argued: "[T]he main issue in this case … is, is this statement that
[Katherine] made to [the New York court] true or false?"

In sum, Katherine falls short of showing that any error the court may have committed in its instructions affected her substantial rights. She thus fails to show that the omitted jury instruction requires reversal under plain-error review.

*D. Attorney Incapacity*

Finally, Katherine argues that the district court erred by refusing her requests to allow her either to present closing arguments herself or to hire a new attorney after her trial counsel, Homyk, suffered what Katherine calls "an unexpected, severe collapse of cognitive function."

We note initially that some of Katherine's argument sounds in ineffective assistance; she complains about Homyk's lack of preparation and general failure to represent her effectively at trial. But "civil litigants have no constitutional right to … effective assistance of counsel," so such arguments form no basis to reverse a jury's verdict in a civil case. *Stroe v. I.N.S.*, 256 F.3d 498, 500 (7th Cir. 2001) (citing, among other cases, *Anderson v. Cowan*, 227 F.3d 893, 901 (7th Cir. 2000)). Instead, "[w]hen lawyers fail, the remedy is malpractice litigation against the wrongdoer, not more litigation against an innocent adversary in the original litigation." *Choice Hotels Int'l, Inc. v. Grover*, 792 F.3d 753, 754 (7th Cir. 2015); *see also Cavoto v. Hayes*, 634 F.3d 921, 924 (7th Cir. 2011) ("A retrial is not a proper remedy for deficient representation in a civil action.").

As we said in *DeSilva v. DiLeonardi*, "[l]itigants who hire their own counsel in civil cases may not point to their lawyers' gaffes as reasons to rerun the litigation." 181 F.3d 865, 869 (7th Cir. 1999). Katherine acknowledges *DeSilva* but argues that its reasoning does not apply here because Homyk was effectively "foisted on [her] by the" court, *id.*, when it refused her

requests to allow her either to present closing arguments herself or to hire a new attorney. That's not how we see things. Refusing to allow a troublesome litigant to terminate her retained counsel the day of closing arguments is not "foisting" an attorney upon her. To say otherwise assumes that litigants have unfettered freedom to hire and fire and swap and drop attorneys at will in the middle of a trial. That is plainly not so; courts have wide discretion to manage the withdrawal and appearance of attorneys during proceedings. *See* N.D. Ill. L. R. 83.17 ("The attorney of record may not withdraw, nor may any other attorney file an appearance … , without first obtaining leave of court … .").

Likewise, courts have "[b]road discretion … to control closing arguments." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 836 (7th Cir. 2016) (quoting *United States v. Sands*, 815 F.3d 1057, 1063 (7th Cir. 2015)). And although civil litigants, like criminal defendants, have a statutory right to proceed *pro se*, 28 U.S.C. § 1654, that right is "not absolute," and "after trial has begun[,] the grant or denial of the right to proceed [p]ro se rests within the sound discretion of the trial court," *United States v. Lawrence*, 605 F.2d 1321, 1324 (4th Cir. 1979) (citing *United States v. Dunlap*, 577 F.2d 867, 868 (4th Cir. 1978)).

All these principles merge with significant force here, where the district court had good reason to suspect that Katherine would not follow the rules and was attempting to manipulate the proceedings. *See United States v. Dougherty*, 473 F.2d 1113, 1124 (D.C. Cir. 1972) (explaining that courts may refuse *pro se* representation "after trial has begun" when the litigant engages in "disruptive behavior").

The bulk of Katherine's argument, however, focuses not on Homyk's mistakes, as such, but on his alleged "incapacity." And we grant that Homyk suffered some sort of breakdown on Friday and flatly refused to give a closing argument on pain of contempt. But his request for a continuance was granted, and he capably gave his argument on Monday. So it's not quite clear to us how Homyk's temporary "incapacity" on Friday had any effect on his performance over the four preceding days or the next week. And we don't see how Katherine's hiring a new lawyer for closing argument or doing it herself would have cured Homyk's alleged errors, most of which occurred before she even made her requests.

Katherine does fault the court for prohibiting Homyk from filing "any new motions" before Monday, and she alleges that that caused her prejudice because Homyk refused to file motions that she requested. But the court only barred "any motions over the weekend … *to terminate Mr. Homyk's services, withdraw him from the record, anything like that*" (emphasis added). To the extent Homyk misunderstood the court's instruction as precluding him from filing any motions whatsoever, that's an issue Katherine must take up with Homyk, not this court: "If a party's lawyer is guilty of professional malpractice (and mental illness is not a defense to … professional malpractice), the party has a remedy against him, but it [cannot] shift the burden of its agent's neglect to the district court and the defendants." *Tango Music, LLC v. DeadQuick Music, Inc.*, 348 F.3d 244, 247 (7th Cir. 2003) (citations omitted) (citing, among other authorities, Restatement (Second) of Torts § 283C (Am. L. Inst. 1979)).

Moreover, even assuming an attorney's incapacity could ever justify a new trial in a civil case, Katherine fails to

mention that she had *two* lawyers. We have previously explained that "[t]he physical incapacity of one of the two lawyers representing plaintiff does not entitle plaintiff to relief … in the absence of a strong showing that other counsel could not have acted for h[er] under the circumstances then existing." *Flett v. W. A. Alexander & Co.*, 302 F.2d 321, 323 (7th Cir. 1962).

In her reply, Katherine shrugs off her second attorney as a "de facto paralegal" because she primarily handled exhibits and served as second chair. But "[t]he record clearly shows that the other counsel was present in court and, indeed, acted as plaintiff's spokes[person]" several times throughout trial, *id.*, including when the parties debated jury instructions and evidentiary issues. Neither Katherine nor Homyk ever proposed that the other lawyer conduct the closing argument. Thus, Katherine's argument, "under all the circumstances shown by the record, is wholly without merit. In any event, it was addressed to the sound discretion of the trial court and we find no abuse of discretion … ." *Id.*

### III. CONCLUSION

For the above reasons, there is no cause to overturn the jury's verdict. The judgment of the district court is therefore AFFIRMED.