NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 2, 2021[*]
Decided September 3, 2021

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 19-1468

| | |
|---|---|
| TERRY WAGNER, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 14-3393 |
| THOMAS BAKER, *Defendant-Appellee*. | Harold A. Baker, *Judge*. |

## O R D E R

Terry Wagner, an Illinois inmate, believes that his doctor, Thomas Baker, was deliberately indifferent to his sleep apnea, gastroesophageal reflux disease (GERD), constipation, and frequent urination. The district court entered summary judgment for Dr. Baker on most of these claims, and a jury later found in the doctor's favor on the one

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

claim—concerning Wagner's sleep apnea—upon which the case proceeded to trial. We affirm.

## I. Background

This appeal concerns the treatment that Wagner received from Dr. Baker between 2012 (when Wagner was transferred to the Western Illinois Correctional Facility in Mount Sterling, Illinois) and 2015 (when Dr. Baker left his position as medical director). Because Wagner challenges the district court's summary-judgment ruling and the jury's verdict for Dr. Baker, we report the facts in the light most favorable to Wagner and in a manner that is consistent with the jury's verdict. See *Frey v. Coleman*, 903 F.3d 671, 674 (7th Cir. 2018). At Wagner's first visit in August 2012, Dr. Baker noted his history of GERD, hypertension, and benign prostatic hyperplasia (an enlarged prostate). Dr. Baker also noted that Wagner reported that he was coughing or spitting up blood because of his GERD and needed to see a gastroenterologist, but no doctor at his prior prison had recommended or approved a referral. To treat Wagner's GERD, Dr. Baker prescribed pantoprazole (a proton-pump inhibitor). He also ordered a chest x-ray and ran tests to check for blood loss or the presence of blood in Wagner's lungs. Based on repeated rounds of those tests, Dr. Baker concluded two months later—as had the doctors at Wagner's previous prison—that Wagner was not actually coughing or spitting up blood.

In early 2013, Wagner told Dr. Baker that he was experiencing additional problems related to his GERD. He said he again was coughing or spitting up blood and now complained of difficulty swallowing. Dr. Baker repeated the earlier tests, which came back normal. Attributing Wagner's swallowing troubles to a sinus problem, Dr. Baker prescribed a mucus thinner and an antihistamine. After Wagner said that the medication was not working, Dr. Baker ordered a swallow study, which turned out normal. Two months later, Wagner again reported coughing up blood, prompting more tests. These too were unremarkable, so Dr. Baker concluded that no further testing or treatment was needed. Wagner continued to receive pantoprazole for his GERD.

Wagner also complained of constipation. In 2012, Dr. Baker told him to raise the issue first at sick call. Wagner did and was prescribed a fiber supplement and stool softeners. Two years later, when Wagner reported continuing constipation, Dr. Baker renewed those prescriptions and ordered lactulose (a laxative). Three times over the next year, Wagner reported that these measures were not working. Dr. Baker responded by ordering additional x-rays (which showed constipation but no cause), adjusting the timing and dosage of the lactulose, prescribing another laxative and a medication to

reduce gas, and discontinuing one of the stool softeners. A CT-scan ordered by Dr. Baker in August 2015 detected no sign of constipation.

Wagner also dealt with frequent urination. In fall 2014, Dr. Baker prescribed finasteride (a medication used to shrink an enlarged prostate) and ordered a battery of tests and x-rays that all came back normal. After Wagner reported no improvement, Dr. Baker prescribed an antibiotic for a possible prostate infection. In spring 2015, Dr. Baker referred Wagner to a urologist, who opined that Wagner's frequent urination was related to his constipation and might warrant a visit to a gastroenterologist for laxatives. At his last visit with Williams that August, Dr. Baker prescribed a bladder relaxant recommended by the urologist.

Wagner further suffers from sleep apnea. At summary judgment and at trial, the parties presented conflicting testimony and evidence on the treatment Wagner received for this condition. Wagner asserted that he was diagnosed with sleep apnea in 2010 and told Dr. Baker upon his arrival at Western that he would stop breathing at night, but Dr. Baker refused to treat him for over a year. For his part, Dr. Baker asserted that Wagner's medical records contained no sleep-apnea diagnosis. Further, Dr. Baker asserted that Wagner first complained to Western staff about difficulty breathing at night in late 2013, at which point Dr. Baker ordered a sleep study that diagnosed Wagner with the condition and then ordered Wagner a continuous positive airway pressure (CPAP) machine.

Wagner sued Dr. Baker (along with other prison officials and staff and several Illinois elected officials) for deliberate indifference to his serious medical needs, in violation of his rights under the Eighth Amendment.

The district court granted in part and denied in part the defendants' motions for summary judgment. The court entered summary judgment against Wagner on his claims relating to the treatment of his GERD, constipation, and frequent urination. The court explained that no rational juror could find that the defendants were deliberately indifferent to these issues, given the extensive array of tests, x-rays, and medicines that they ordered in response to Wagner's reports of ongoing symptoms. And, though Wagner insisted that his symptoms persisted and that he needed to see a gastroenterologist, he provided no evidence that the defendants' determinations about his treatment departed from accepted professional judgment. But the court denied summary judgment on Wagner's claim concerning his sleep apnea. Noting that Dr. Baker had not addressed Wagner's assertions that he told the doctor of his trouble

sleeping for a year before he received treatment, the court determined that a reasonable juror could find that Dr. Baker deliberately delayed the sleep study and later treatment.

The case proceeded to trial on the sleep-apnea claim. Wagner testified that he had reported sleep troubles to Dr. Baker as soon as he arrived at Western and that he had submitted several grievances on the issue before fall 2013. Dr. Baker also testified, pointing out that there was no record that Wagner reported sleep issues to him or to anyone else at Western through the grievance process before September 2013. The jury found for Dr. Baker, and the court entered judgment in his favor.

Wagner proceeded to file several post-trial motions. Within a month of the entry of judgment, he filed two motions that requested copies of the trial transcripts and expressed an intent to appeal the jury's verdict and the court's summary-judgment ruling. He also moved for a new trial, contending that the evidence did not support the jury's verdict because Dr. Baker had lied. He argued that he could contradict Dr. Baker's testimony through newly discovered evidence—encyclopedia entries on sleep apnea and a note from a correctional officer at his current prison (not Western) that stated that grievances there were not recorded in the way that Dr. Baker testified. The court denied Wagner's motion, concluding that the jury was entitled to credit Dr. Baker's testimony. Wagner then sought reconsideration of the denial of his motion for a new trial; the court denied that motion on January 30.

## II. Discussion

We first address the scope of our jurisdiction. Wagner's notice of appeal, mailed on February 28, 2019, was timely to appeal only the denial of reconsideration of the denial of his motion for a new trial. He mailed the notice more than 30 days after the denial of his motion for a new trial on December 17, 2018, and the time for appealing that denial was not tolled by his later motion for reconsideration. See FED. R. APP. P. 4(a)(1)(A), (a)(4)(A)(v), (c); *Armstrong v. Louden*, 834 F.3d 767, 769 (7th Cir. 2016). We therefore ordered the parties to file supplemental briefs addressing whether our jurisdiction extended over only the denial of his motion for reconsideration.

We are satisfied that our jurisdiction is not so limited, however, because Wagner's motions for transcripts provided notice of his intent to appeal the jury's verdict and the district court's order entering summary judgment. A filing that does not meet the technical requirements of Rule 3 of the Federal Rules of Appellate Procedure may nonetheless provide adequate notice of a litigant's intent to appeal if it includes "the functional equivalent" of what the rule requires. *Smith v. Barry*, 502 U.S. 244, 248

(1992). Here, both of Wagner's motions were timely filed within 30 days of the judgment. See FED. R. APP. P. 4(a)(1)(A), (a)(4)(B)(i). The first motion said he was "going to appeal the jury verdict to the Seventh Circuit of Appeals," and the second elaborated that "even if the motion for a new trial is denied … it is the Plaintiff's intent to appeal the Defense counsel's motion for summary judgment being granted as well as the jury's verdict in favor of Dr. Thomas Baker." Because they contain the name of the party taking the appeal, designate the jury verdict and the summary-judgment order as the rulings being appealed, and name this court, these filings are functional equivalents of a notice of appeal under Rule 3. See FED. R. APP. P. 3(c)(1); *Smith*, 502 U.S. at 248; *Smith v. Grams*, 565 F.3d 1037, 1041–42 (7th Cir. 2009). But Wagner did not submit any timely filing that reflected an intent to appeal the court's order denying his motion for a new trial, so we may not review that decision. See FED. R. APP. P. 4(a)(4)(B)(ii).

As for the merits, Wagner first challenges the district court's decision to enter summary judgment for Dr. Baker on his claims that he was deliberately indifferent to his GERD. He argues that he had identified a fact dispute based on his testimony that Dr. Baker ignored his complaints of coughing or spitting up blood. He also contends that the court overlooked evidence that Dr. Baker refused to follow through on referrals made by his former prison doctors and urologist for him to see a gastroenterologist.

But the record does not support Wagner's version of events, and no reasonable jury could find that Dr. Baker deliberately disregarded this serious medical condition. See *Farmer v. Brennan*, 511 U.S. 825, 837, 846 (1994); *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). First, Dr. Baker did not ignore Wagner's complaints about his GERD or coughing or spitting up blood. Instead, the record shows that Dr. Baker prescribed medication to reduce stomach acid and relied on extensive testing to determine that Wagner did not require other treatment. Wagner cannot point to any evidence showing that Dr. Baker's treatment decisions departed from professional standards to such an extent that they demonstrated an absence of professional judgment. See *Johnson v. Dominguez*, 5 F.4th 818, 826 (7th Cir. 2021). Second, the record does not reflect that any doctor referred Wagner to a gastroenterologist. And even if one had, Dr. Baker's disagreement with another physician does not show that he provided constitutionally inadequate care. See *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

Wagner next argues that the district court improperly entered summary judgment on his claims that Dr. Baker was deliberately indifferent to his complaints of constipation and need to urinate frequently. He contends that the evidence showed that Dr. Baker persisted with ineffective treatment for those problems and ignored the

advice of specialists—for instance, by not treating his constipation before his urinary frequency, as recommended by the urologist.

Here too, the district court correctly concluded that Wagner had not produced evidence supporting his claims. He does not identify any evidence that questions the changes in treatment (i.e., alterations in his medication) that Dr. Baker made in response to his complaints. *Cf. Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (jury could find deliberate indifference where defendants continued with ineffective treatment). Indeed, the last scans reviewed by Dr. Baker showed that Wagner was not constipated. Wagner also produced no evidence suggesting that Dr. Baker ignored a specialist's advice. See *Harper v. Santos*, 847 F.3d 923, 927 (7th Cir. 2017). Rather, Dr. Baker followed the urologist's instruction that, once he was no longer constipated, Wagner's urinary frequency could be treated with a bladder relaxant.

Wagner next raises two challenges to the jury's verdict. First, he takes issue with defense counsel's statement at closing argument that he lied when he testified that he complained about his sleep apnea before 2013. But Wagner waived this argument when he failed to object at trial to counsel's closing remarks. See *Black v. Wrigley*, 997 F.3d 702, 710–11 (7th Cir. 2021). Second, Wagner challenges defense counsel's introduction of certain medical records (pertaining to his prior drug addiction and sexually transmitted disease) that he regards as prejudicial. But the introduction of these records could not have been plain error, given that Wagner posed no objection and used them himself at trial. See *id.* at 709; *United States v. Addison*, 803 F.3d 916, 919 (7th Cir. 2015).

Finally, Wagner argues that the district court erred in refusing to reconsider the denial of his motion for a new trial. The court appropriately exercised its discretion to deny that motion. See *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 953 (7th Cir. 2013). The evidence Wagner purported to be newly discovered—the encyclopedia entry on sleep apnea and the note from the correctional officer about the grievances process— did not contradict Dr. Baker's testimony or warrant a new trial. See *id* at 955.

We have considered Wagner's other arguments, and none has merit.

AFFIRMED